[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Barbara Amaral, whose birth name was Barbara Smith, and the defendant, William Amaral, were married June 6, 1983 in Pennsylvania. This is the second marriage for each party. There are no minor children issue of the marriage although each have children by a former marriage.
The following facts are found: the parties began living together in CT Page 3935 1980 in Rhode Island. Both were employed at a glass factory where they initially met in the 70's. Late in 1980 they moved to Pennsylvania where they worked in a glass plant. They were married there and removed to Connecticut in 1990 when the defendant became employed at Anchor Glass in Dayville. The plaintiff, who had been a packer in the Pennsylvania factory, did not seek work at Anchor because of back problems. By 1990 she had been operated on four times. Since then she has had one more surgical procedure in January of 2002. She has not established a disability claim under Social Security laws, although she tried to do so.
In March 1997, knowing that Anchor Glass in Dayville was about to close, the plaintiff obtained employment in another Anchor plant in southern New Jersey. The parties placed their Killingly home up for sale, intending to relocate to New Jersey. The plaintiff physically removed to an apartment near his worksite there.
The home did not sell because of problems with the septic system. In the first year of their separation, the defendant returned to Connecticut about five times and called about twice a week. The plaintiff visited New Jersey once and looked at homes there. Both rejected the properties visited by them as being too expensive.
When the parties went to Maine on a short vacation in May of 1998, the defendant noticed a change in his wife's feeling for him. She was cold toward him and he concluded that she no longer wanted to sell the Killingly home and join him in New Jersey. Credible evidence at the trial established that early on in the separation the plaintiff voiced her objection to the relocation.
The defendant did not pay support directly to the plaintiff while in New Jersey but he knew she was withdrawing funds each month from their bank account containing $30,000 (as of March of 1997) to pay the mortgage, utilities, taxes, insurance, and household expenses. Additionally, tax refunds were used to pay for necessaries. In two years the $30,000 plus funds realized from the sale of bonds were expended. Since a June 12, 2000 agreement, the defendant has been paying $800 a month to the plaintiff as a contribution toward joint debts.
Finally, in early 1999, the defendant said in a telephone call to the plaintiff that he no longer wanted to be married to her. He said he no longer wanted the responsibilities of marriage. The parties have been permanently separated since May of 1998.
In late 1999, the plaintiff began cohabiting at the marital residence with an unrelated male, Richard Arel, a high school acquaintance. He does CT Page 3936 not pay rent to the plaintiff but he contributes to the cost of food and he does outdoor chores.
The plaintiff brought this action in April of 2000. She has resided in Connecticut for at least a year prior to the filing of the complaint.
Financially, the defendant, who is now 52 years old and has a grade school education, earns $1450 weekly as a supervisor at Anchor Glass Container in New Jersey. The plaintiff is 60 years old and unemployed at this time due to her recent surgery. Her health is affected by back pain that requires daily medication. In the last 10 years she has worked on and off in entry level non-skilled jobs. She has supplemented her income by making crafts that she would sell at craft fairs held at least twice a year. Bank deposits indicate her income from the sale of crafts has totaled in the thousands of dollars rather than hundreds of dollars in some years. Since the income was never reported on the parties' joint tax return the amounts cannot be confirmed.
The parties agree that the fair market value of the jointly owned marital residence is $130,000. The mortgage balance is $74,000 leaving equity of $56,000 for the parties.
The defendant has a 401K plan through his employer with a value as of February 12, 2002 of $187,668.86. The plaintiff's retirement benefits are limited to social security entitlements as follows: $477 per month beginning March 8, 2004; $645 per month beginning January 8, 2008 if she waits until age 65 to collect and $873 per month beginning March 8, 2012 if she reaches age 70 before claiming benefits.
The parties are at odds about a property settlement and alimony, thereby invoking the statutory criteria found in C.G.S. §§ 46b-81 and46b-82. As to the cause of the breakdown, the court finds that although the defendant was more vocal in expressing his desire to terminate the marriage, the plaintiff's tacit refusal to relocate also materially affected the relationship and thus the parties who, to their credit continue to treat each other with respect, are equally responsible for the breakdown of the marriage of almost nineteen years.
The court finds the marriage has broken down irretrievably and there is no reasonable likelihood of reconciliation.
The plaintiff's cohabitation with Mr. Arel did not contribute to the breakdown of the marriage, as it occurred about eighteen months after the permanent separation.
The court, being mindful of the provisions of Chapter 815j of the CT Page 3937 General Statutes, particularly §§ 46b-81 and 46b-82, finds the following orders to be fair and equitable:
1. The marriage of the parties is dissolved on the ground of irretrievable breakdown;
2. Alimony is awarded to the plaintiff as follows: periodic alimony of $850 monthly until March of 2004 when it shall be reduced to $400 monthly until January of 2008 when the sum shall be reduced to $200 monthly until March of 2012 when the periodic alimony shall terminate;
3. The defendant shall quit-claim the marital residence located at 49 Black Rock Avenue, Danielson, Connecticut to the plaintiff. The plaintiff shall be responsible for the mortgage, taxes and insurance, and all other expenses relating to said property and hold the defendant harmless from the same. The defendant shall receive a credit in the amount of $28,000, representing a one-half interest of the equity in said marital residence, to be deducted as outlined in paragraph 4 below;
4. The defendant shall transfer one-half of his 401K plan by Qualified Domestic Relations Order, less a credit of $28,000 representing one-half interest of the equity in said marital premises as described in paragraph 3, above. For purposes of determining the value of the 401K plan, the date of February 12, 2002 shall be used, as previously agreed to by the parties. The court shall retain jurisdiction over all aspects of the Qualified Domestic Relations Order and its implementation until the Qualified Domestic Relations Order is approved by the plan administrator;
5. The parties shall keep all bank accounts now in their possession and waive all claims to the others.
6. Each party shall be responsible for the debts listed on their respective financial affidavits, and hold the other party harmless and indemnify them thereon;
7. The defendant shall maintain the current medical and dental insurance through his place of employment through COBRA for the benefit of the plaintiff for a period of thirty-six (36) months from the date of judgment, with the defendant being responsible for the cost of said insurance. The responsibility by the defendant for the cost of said insurance for the benefit of the plaintiff shall terminate if the defendant loses his employment involuntarily.
8. Each party shall be responsible for their own attorney's fees. CT Page 3938
9. The plaintiff shall prepare the judgment file.
Potter, J.